UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

FUJIFILM HOLDINGS CORP.,

        Plaintiff,

- v. –

XEROX CORP.,

        Defendant.

18 CV 05458 (JGK)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT XEROX CORPORATION'S MOTION TO DISMISS

**WILLKIE FARR & GALLAGHER LLP**

Tariq Mundiya
Sameer Advani
Shaimaa Hussein

787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant Xerox Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................4

The Fuji Transaction ................................................................................5

Shareholder Lawsuits are Filed and the Fuji Transaction is Enjoined................7

Xerox Exercises Its Termination Right.............................................................8

Xerox Settles the Deason Litigation Following Fuji's Breaches..........................9

Fuji Moves Forward With Litigating the State Court Actions and Then Also
Commences This Federal Action..................................................................9

ARGUMENT ........................................................................................................11

I.     THIS ACTION SHOULD BE DISMISSED BECAUSE FUJI'S DECISION TO
       FILE IN THIS COURT CONSTITUTES IMPROPER FORUM SHOPPING.................12

       A.     The Forum Selection Clause of the SSA Does Not Prohibit a Motion to
              Dismiss This Action on the Basis of Fuji's Improper Forum Shopping...............12

       B.     This Action Should be Dismissed on Grounds of *Forum Non Conveniens* ..........13

              1.   Fuji's Choice of Forum is Clear Forum Shopping and, Therefore,
                   Entitled to no Deference. ........................................................14

              2.   New York State Supreme Court is an Adequate Alternative Forum. ........15

              3.   The Balance of the *Gilbert* Factors Strongly Favors Adjudication
                   in New York State Supreme Court. ..........................................16

II.    THE CLAIMS BY FUJI SHOULD ALSO BE DISMISSED FOR FAILURE TO
       STATE A CLAIM. ..................................................................................17

       A.     Fuji Has Failed to State a Claim Against Xerox Based on Xerox's Proper
              Exercise of its Termination Rights. ....................................................18

       B.     Fuji Has Failed to State a Breach of Contract Claim Against Xerox
              Arising From its Settlement of the *Deason I* Litigation. .........................20

       C.     Fuji Has Failed to State A Claim for Declaratory Relief Resulting from
              Xerox's Purported "Change of Recommendation"...................................20

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*3839 Holdings LLC v. Farnsworth,*
No. 654463/2016, 2017 WL 5649812 (Sup. Ct. N.Y. Cty. Nov. 24, 2017) ................20

*Alfadda v. Fenn*, 966 F. Supp. 1317 (S.D.N.Y. 1997) ...................................................14

*Am. Nat'l Theatre & Acad. v. Am. Nat'l Theatre Inc.,*
No. 05-cv-4535 (JGK), 2006 WL 4882916 (S.D.N.Y. Sept. 27, 2006) ...................5, 20

*Andrews v. Sotheby Int'l Realty, Inc.,*
No. 12 Civ. 8824 (RA), 2014 WL 626968 (S.D.N.Y. Feb. 18, 2015)..............................20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................17

*Brice v. C.R. England, Inc.,*
278 F. Supp. 2d 487 (E.D. Pa. 2003) ....................................................................17

*CBF Industria de Gusa S/A v. AMCI Holds., Inc.,*
316 F. Supp. 3d 635 (S.D.N.Y. 2018)....................................................................10

*Chamberlain v. Am. Honda Fin. Corp.,*
931 A.2d 1018 (D.C. Cir. 2007) ...........................................................................17

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I,*
No. 15-cv-3474, 2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015) ...................13, 14

*Geiger v. Solomon-Page Grp., Ltd.,*
933 F. Supp. 1180 (S.D.N.Y. 1996) ......................................................................19

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947)................................................................................................16

*Fustok v. Banque Populaire Suisse*, 546 F.Supp. 506, 514 (S.D.N.Y. 1982).........................13, 14

*Iragorri v. United Techs. Corp.,*
274 F.3d 65 (2d Cir. 2001)....................................................................................14

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.,*
933 F. Supp. 347 (S.D.N.Y. 1996) ........................................................................21

*LaSala v. UBS, AG,*
510 F. Supp. 2d 213 (S.D.N.Y. 2007)....................................................................13

*Maniolos v. United States*,
    741 F. Supp. 2d 555 (S.D.N.Y. 2010)................................................................18

*In re Martin Paint Stores*,
    199 B.R. 258 (Bankr. S.D.N.Y. 1996), *aff'd*, 207 B.R. 57 (S.D.N.Y. 1997)...................21

*Merit Grp., LLC v. Sint Maarten Int'l Telecom. Servs., NV*,
    No. 08-cv-3496(GBD), 2009 WL 3053739 (S.D.N.Y. Sept. 24, 2009) ...........................18

*Nationwide CATV Auditing Servs., Inc. v. Cablevision Sys. Corp.*,
    No. 12-cv-3648(SJF)(ETB), 2013 WL 1911434 (E.D.N.Y. May 7, 2013) .......................19

*Ott v. Kaiser-Georgetown Cmty. Health Plan, Inc.*,
    689 F. Supp. 9 (D.D.C. 1988) ......................................................................17

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)....................................................................14, 15

*R. Maganlal & Co. v. M.G. Chem. Co.*,
    942 F.2d 164 (2d Cir. 1991).........................................................................13

*Saud v. PIA Invs. Ltd.*,
    No. 07-cv-5603(NRB), 2007 WL 4457441 (S.D.N.Y. Dec. 14, 2007) ...........................15

*Saxon Tech., LLC v. Wesley Clover Solutions-N. Am., Inc.*,
    No. 652169/2013, 2014 WL 36104 (Sup. Ct. N.Y. Cty. Jan. 2, 2014)............................20

*Simon v. Silfen*,
    247 F. Supp. 762 (S.D.N.Y. 1965) ............................................................16, 17

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*,
    842 F. Supp. 2d 502 (S.D.N.Y. 2012)...............................................................18

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*,
    186 F. Supp. 3d 257 (E.D.N.Y. 2016) .......................................................18, 19, 20

*TransformaCon, Inc. v. Vista Equity Partners, Inc.*,
    No. 15-cv-3371 (SAS), 2015 WL 4461769 (S.D.N.Y. July 21, 2015)..............................22

*In re Xerox Corp. Consol. S'holder Litig.*,
    76 N.Y.S.3d 759 (Sup. Ct. N.Y. Cty. 2018) ..............................................7, 8, 15

**Other Authorities**

Restatement (Second) of Contracts...............................................................21

Defendant Xerox Corporation ("Xerox") respectfully submits this memorandum of law in support of its motion to dismiss this action by plaintiff Fujifilm Holdings Corp. ("Fuji") in its entirety on the grounds of improper forum shopping or, alternatively, failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In a brazen exercise of forum shopping, Fuji filed this lawsuit seeking to challenge Xerox's termination of a proposed strategic transaction between Xerox and Fuji (the "Fuji Transaction") despite three related proceedings pending in another forum. Fuji would have this Court simply ignore months of litigation in those proceedings, which are pending before Justice Barry R. Ostrager of the New York Supreme Court, New York County (the "New York Supreme Court"), that center around the Fuji Transaction and involve many of the same issues raised in Fuji's complaint here. Fuji's motivation for launching this new front is transparent: after Justice Ostrager's unfavorable decision in April enjoining the Fuji Transaction, which was highly critical of Fuji's role in negotiating that transaction, Fuji clearly hopes that this Court will look more favorably on its actions and allow it to reap damages "exceed[ing] $1 billion" for the termination of a transaction that Justice Ostrager concluded "disproportionately favored Fuji at the expense of Xerox shareholders."

The events leading up to the commencement of this action make Fuji's motive for filing its claims in this Court readily apparent. Soon after the Fuji Transaction was announced in January 2018, several Xerox shareholders filed litigation in the New York Supreme Court alleging that Xerox's directors breached their fiduciary duties in negotiating and approving the transaction, and that Fuji aided and abetted those breaches. After presiding over a two-day evidentiary hearing on the shareholders' motion for a preliminary injunction, which involved the testimony of eight live witnesses, four additional witnesses through deposition testimony, and several hundred

exhibits, Justice Ostrager enjoined the Fuji Transaction.   The hearing followed hundreds of thousands of pages of document discovery, including documents produced *by Fuji*.   Justice Ostrager's injunction was based, in part, on his finding that there was a likelihood of success on the aiding and abetting claim against Fuji.   In his 26-page order, Justice Ostrager concluded that the evidence, including communications between Fuji representatives and Xerox's then-CEO Jeff Jacobson, made clear that Fuji "[took] advantage" of an opportunity to "take control of Xerox without spending a penny."   He also concluded that the Fuji Transaction was designed to "disproportionately favor[] Fuji at the expense of Xerox shareholders" and that Fuji viewed Jacobson as a means by which to "maintain complete control over the Xerox board."

Following the injunction, Xerox entered into settlements with the plaintiffs in two of the actions in the New York Supreme Court.   During this same time period, Xerox also tried to engage Fuji in negotiations for a revised transaction but those negotiations were unsuccessful.   On May 13, 2018, Xerox exercised its unambiguous contractual right to terminate the Fuji Transaction on the grounds that, among other things, Fuji had failed to timely delivery audited financial statements for Fuji Xerox and that certain financial information reflected in the belated audited financial statements materially deviated from Fuji Xerox's prior unaudited financial statements.

Notwithstanding termination of the Fuji Transaction, the three shareholder actions in the New York Supreme Court continue, and Fuji is a defendant in each.   In two of those actions, Fuji has asserted cross-claims and third party claims against certain current and former Xerox directors, and thereafter served broad discovery requests, which as discussed below, overlap with document requests served by Fuji in this action.   Put simply, *Fuji is already actively litigating against Xerox (and others) in the New York Supreme Court claims arising from the Fuji Transaction*.

Fuji has now commenced this action challenging Xerox's termination of the Fuji Transaction as "pretextual" and the result of "external pressures." Fuji's claims are patently meritless, and that is exactly why Fuji chose *not* to file this action before Justice Ostrager. Having already spent months presiding over litigation relating to the Fuji Transaction, Justice Ostrager has already concluded that it was a one-sided deal that benefited Fuji at the expense of Xerox's shareholders, and even more damaging, that Fuji acted improperly in negotiating the transaction. Convincing Justice Ostrager that Fuji should receive over $1 billion in damages as a result of Xerox's termination of that same transaction would be a fool's errand. It is precisely for this reason that Fuji commenced this action in a different court. Fuji's gambit should not be rewarded.

Fuji's claims should be dismissed for two, independent reasons.

*First*, because Fuji's decision to try its luck before this Court is blatant forum shopping, this Court has broad discretion to block such gamesmanship by dismissing the action under either (or both) its inherent jurisdiction to manage its docket or the doctrine of *forum non conveniens* in favor the New York Supreme Court, where three related actions are currently being *actively litigated* before Justice Ostrager. Fuji is involved in each of these actions – having already filed cross and third-party claims against, and also served discovery requests on, various parties including Xerox. Fuji's expected assertion that it is allowed to forum shop in this manner because Xerox has contractually waived its right to challenge the Southern District of New York as a forum makes no sense. The forum selection clause at issue – which names both the New York Supreme Court and this Court as the exclusive fora – is intended to ensure that the litigation does not proceed in a jurisdiction *other than* New York. It most certainly does not preclude a challenge where a party avoids a contractually designated forum for tactical reasons.

*Second*, the claims against Xerox also each fail as a matter of law. Fuji's claims against Xerox premised on an alleged "pretextual termination" fail because the undisputed record shows that Xerox properly exercised its right to terminate under the clear terms of the transaction agreements. The provisions in the transaction agreements requiring timely delivery by Fuji of audited financial statements and the absence of any material deviations in those financials (when compared to the unaudited financial statements provided in diligence) were specifically negotiated for Xerox's protection and expressly contemplated termination where, as shown here, those requirements were not met. Likewise, Fuji's claim that Xerox breached the transaction agreements by failing to provide notice of, or obtain Fuji's consent to enter into, the settlement of the shareholder litigation fails because, even if such notice and consent were required, the complaint does not allege any non-speculative damages resulting from that purported breach. Finally, the claim for declaratory judgment based on the Xerox board's supposed failure to recommend that Xerox shareholders vote in favor of the Fuji Transaction fails because it assumes that the Xerox board could have recommended the transaction even *after* Justice Ostrager enjoined all further action to consummate the Fuji Transaction. This claim also fails because Fuji is not entitled to any relief under an agreement already rightfully terminated by Xerox.

Accordingly, for these reasons and as explained more fully below, Xerox respectfully requests that the Court grant this motion and dismiss Fuji's complaint.

## STATEMENT OF FACTS

Xerox is a provider of digital print technology and related solutions. (Compl. ¶ 2.)[1] For the past fifty-six years, Xerox has principally accessed the Asia-Pacific market through a joint

---

[1]  The factual background is taken from the allegations of the complaint, which will be assumed to be true solely for the purposes of this motion.

venture with Fuji known as Fuji Xerox (or the "Joint Venture").  (*Id.* ¶ 3.)

Fuji is incorporated under the laws of Japan and has its principal place of business in Tokyo, Japan.  (*Id.* ¶ 1.)

## The Fuji Transaction

In March 2017, Fuji informed Xerox that it was interested in exploring a potential strategic transaction with Xerox.  (Compl. ¶ 23.)   In the following months, the Xerox board conducted a comprehensive review of potential strategic alternatives to enhance shareholder value, including a potential transaction with Fuji.  (*See* Ex. A at 9.)[2]  In late January 2018, the Xerox board approved the Fuji Transaction.  (Compl. ¶¶ 52-54.)

The terms of the Fuji Transaction were principally memorialized in a Share Subscription Agreement ("SSA") and a Redemption Agreement (collectively, the "Transaction Agreements"), both dated January 31, 2018.[3]   (Compl. ¶ 53; Ex. B.)  The Fuji Transaction contemplated that Fuji would contribute its 75% share in Fuji Xerox to Xerox in exchange for 50.1% ownership of the combined company (consisting of Xerox and Fuji Xerox).  (Compl. ¶ 54.)  Pursuant to the SSA, Xerox shareholders were to receive a one-time special cash dividend of $2.5 billion (approximately $9.80 per share), as well as 49.9% of the shares in the combined company.  (*Id.*)

---

[2]   References to "Ex. __" are to the exhibits attached to the Declaration of Tariq Mundiya dated October 1, 2018, submitted in support of this Motion.

[3]   This Court may consider the terms of the Transaction Agreements and the parties' correspondence, all of which are referenced in the complaint.  *See Am. Nat'l Theatre & Acad. v. Am. Nat'l Theatre Inc.*, No. 05-cv-4535 (JGK), 2006 WL 4882916, at *1 (S.D.N.Y. Sept. 27, 2006).

The SSA included representations and covenants on behalf of both Xerox and Fuji. (Compl. ¶¶ 55.)   Among these was a covenant obligating Fuji to deliver Fuji Xerox's audited financial statements to Xerox by April 15, 2018.  (SSA ¶ 5.05(a).)

The SSA also specified conditions under which either party could terminate the SSA.  (Compl. ¶ 59.)  Specifically, Section 7.01(d) of the SSA provided Xerox with a termination right if "the consolidated financial positions, results of operations and cash flows of [Fuji Xerox] and its Subsidiaries reflected in any of the delivered [Fuji Xerox] Audited Financials deviate, in any material respect, from the consolidated financial position, results of operations and cash flows of [Fuji Xerox] and its Subsidiaries reflected in the Unaudited Financial Statements."  (SSA § 7.01(d); Compl. ¶ 59.)  The SSA further provided that Xerox could terminate the SSA in the event of a "failure to perform any covenant or agreement on the part of [Fuji] set forth in this Agreement . . . which breach or failure to perform cannot be cured."  (SSA § 7.01(d).)

As Fuji alleges, Fuji's contribution of its 75% stake in Fuji Xerox was a component of the consideration Fuji was providing to Xerox in connection with the Fuji Transaction. (Compl. ¶ 53.)  Fuji, however, was in the midst of investigating significant accounting irregularities at Fuji Xerox that had delayed the issuance of Fuji Xerox's audited financial statements.  (Compl. ¶¶ 24, 30, 34, 50.)  Among other things, the parties agreed that Xerox could terminate the SSA if the Fuji Xerox audited financial statements that were eventually delivered to Xerox deviated "in any material respect" from drafts provided to Xerox during the diligence process.  (SSA § 7.01(d); Compl. ¶ 59.)

By April 15, 2018, Xerox had not received the audited financial statements that Fuji was contractually obligated to provide.  Those audited financial statements were not delivered to Xerox until April 24, 2018.  (Compl. ¶ 73.)

**Shareholder Lawsuits are Filed and the Fuji Transaction is Enjoined**

After the Fuji Transaction was announced, several Xerox shareholders filed actions against Xerox, Fuji, and others challenging the Fuji Transaction and the process by which it was negotiated and approved.  (Compl. ¶¶ 62-63.)  On February 13, Xerox shareholder Darwin Deason commenced an action in the New York Supreme Court alleging that the Xerox board breached their fiduciary duties in approving the Fuji Transaction and that Fuji aided and abetted those breaches.  *Deason v. Fujifilm Holdings Corp., et al.*, Index No. 650675 (Sup. Ct. N.Y. Cty.) ("*Deason I*").  (Compl. ¶ 62.)  Deason sought to, among other things, enjoin consummation of the Fuji Transaction.  Thereafter, four additional shareholders separately filed putative class action lawsuits in the New York Supreme Court also challenging, and seeking to enjoin, the Fuji Transaction, which were consolidated under the caption *In re Xerox Corp. Shareholder Litigation*, Index No. 650766 (Sup. Ct. N.Y. Cty.) (the "Class Action").  (Compl. ¶ 63.)

On April 27, following a two-day evidentiary hearing, the New York Supreme Court issued a preliminary injunction enjoining defendants from taking any further action to consummate the Fuji Transaction (the "Injunction").  (Compl. ¶ 75.)  In doing so, the court concluded that plaintiffs had established a likelihood of success on their aiding and abetting claim against Fuji.  *In re Xerox Corp. Consol. S'holder Litig.*, 76 N.Y.S.3d 759, 772-73 (Sup. Ct. 2018).  Justice Ostrager's decision relied on, among other things, communications between Fuji representatives and Xerox's then-CEO Jeff Jacobson, indicating that Fuji "[took] advantage" of an opportunity to "take control of Xerox without spending a penny."  (*Id.* at 770.)

Specifically, Justice Ostrager stated that "Fuji's representatives . . . believed that the Fuji Transaction disproportionately favored [Fuji] at the expense of Xerox shareholders" and that Fuji worked with Jacobson to "consummate a deal entirely in [Fuji's] favor and so that Jacobson could maintain his position as CEO." (*Id.* at 773.)  Justice Ostrager noted that Fuji's

7

representatives, "knowing full well that . . Jacobson could soon be replaced as CEO, presented Jacobson with the opportunity to stay on as CEO of the combined entity that would emerge from a change of control transaction that deprived Xerox shareholders of an adequate control premium." (*Id.*) Justice Ostrager concluded that the communications between Fuji and Jacobson "demonstrate[d] the significant degree to which the two were aligned," and were sufficient to establish a likelihood of success on the claim against Fuji. (*Id.*)

## Xerox Exercises Its Termination Right Following Fuji's Breaches

On April 23, prior to the issuance of the Injunction, Xerox sent to Fuji a "Notice of Breach," which made clear that Fuji's failure to deliver the audited financial statements of Fuji Xerox by the April 15 date specified in the SSA constituted a "failure to perform any covenant." (Compl. ¶¶ 71-72; Ex. C.)

Thereafter, by letter dated May 13, Xerox notified Fuji that it was exercising its right to terminate the Fuji Transaction pursuant to, among other things, Section 5.05(a) of the SSA based on that breach. (Compl. ¶¶ 89-90; Ex. D.) As Fuji concedes, the audited financial statements were not delivered until April 24, 2018. (Compl. ¶ 73.)

Xerox also notified Fuji, in that same letter, that it was exercising its right to terminate the Fuji Transaction pursuant to SSA § 7.01(d) because, once finally delivered, the audited financial statements showed key financial performance results which deviated materially from those reflected in the unaudited financial statements provided during due diligence on the transaction. (*Id.*) For example, Fuji Xerox's net income for the fiscal year ending March 31, 2017 was ***14.7% lower*** than the net income reported in Fuji Xerox's unaudited financial statements. (Ex. D.) Similarly, EBITDA for the fiscal year ending March 31, 2017, was ***6.7% lower*** than as reflected in the unaudited financial statements. (*Id.*)

Tellingly, Fuji has not disputed these deviations.

8

**Xerox Settles the Deason Litigation**

On May 13, Xerox entered into a settlement agreement with Mr. Deason (the "Deason Settlement Agreement"). In conjunction with the execution of the Deason Settlement Agreement, Xerox also executed a memorandum of understanding with the Class Action plaintiffs (the "Class MOU"). (Ex. E.) The Class MOU contemplates a discontinuance of the Class Action as against Xerox and the directors named as defendants. (*Id.* ¶ 20.) On September 21, the Class Action plaintiffs filed motions seeking to certify a class for purposes of settlement and approval of a notice of settlement to members of the proposed class. (NYSCEF Doc. Nos. 708, 742.)

While *Deason I* has been discontinued as to Xerox and a discontinuance of the Class Action is contemplated as against Xerox, Fuji remains a defendant in both actions. Discovery is currently underway in those actions and, on August 6, Justice Ostrager issued a Preliminary Conference Order setting forth discovery and other pre-trial deadlines. (Ex. F.)

Additionally, on May 24, Xerox shareholder Carmen Ribbe commenced a purported derivative action in the New York Supreme Court, challenging the Fuji Transaction, Deason Settlement Agreement, and Class MOU. *See Ribbe v. Jacobson*, Index No. 652613/2018 (Sup. Ct. N.Y. Cty.) ("*Ribbe*"). As a result, Fuji is currently a party in three state court actions – *Deason I*, the Class Action, and *Ribbe* – challenging the Fuji Transaction (collectively, the "State Court Actions"), all pending before Justice Ostrager.

**Fuji Moves Forward With the State Court Actions and Also Commences this Action**

On June 14, Fuji filed cross-claims and third-party claims in the New York Supreme Court in *Deason I* and the Class Action against certain current and former Xerox

directors.[4] Fuji's cross and third-party claims seek contribution from Xerox's directors in the event Fuji is found liable for aiding and abetting.

Four days later, on June 18, Fuji commenced this action, asserting the following four causes of action against Xerox, each arising from the now-terminated Fuji Transaction: breach of contract based on an alleged "pretextual termination" (Count I); breach of contract based on a purported settlement of the *Deason I* action without notice to, or the consent of, Fuji (Count II); breach of the implied covenant of good faith and fair dealing based on the alleged "pretextual termination" (Count III); and declaratory judgment regarding a purported change in Xerox's recommendation to shareholders regarding approval of the Fuji Transaction (Count IV).

Like the State Court Actions, this action concerns the Fuji Transaction and seeks, among other things, damages from Xerox – "estimated to exceed $1 billion" – due to the loss of "synergies" that the Fuji Transaction allegedly would have generated, and a declaration that would entitle Fuji to a termination fee of $183 million. (Compl. ¶¶ 101, 110.) In support of its claim that the termination was "pretextual," Fuji's complaint contains pages of allegations about the negotiations that led to the approval and execution of the Transaction Agreements. (*See* Compl. ¶¶ 22-52.) The pleadings for the State Court Actions similarly include allegations regarding the negotiation and execution of the Transaction Agreements, and the conduct of Xerox and its directors with regard to the Fuji Transaction.[5]

---

[4]   Answer, Cross-Claim, and Third-Party Complaint (Ex. G, *Deason I* NYSCEF Doc. No. 1087); Answer, Cross-Claim, and Third-Party Complaint (Ex. H, *Class Action*, NYSCEF Doc. No. 592). This Court may take judicial notice of such court filings. *See e.g.*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 640 n.1 (S.D.N.Y. 2018) ("Courts may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.") (quotations omitted) (ellipses in original).

[5]   Amended Complaint (Ex. I, *Deason I*, NYSCEF Doc. No. 393); Amended Complaint (Ex. J, *Class Action*, NYSCEF Doc. No. 543); Complaint (Ex. K, *Ribbe*, NYSCEF Doc. No. 1).

The settlements entered into by Xerox are another area of overlap between this action and the State Court Actions.  As noted above, Fuji's complaint claims that Xerox's settlement with Mr. Deason was made without notice to, or the consent of, Fuji.  (Compl. ¶¶111-23.)  Further, Fuji's Complaint bases its "pretextual" termination theory on the conduct and alleged motivations of Xerox's board in entering into the settlements.  (*See* Compl. ¶¶ 93, 103-05.)  In particular, Fuji's complaint contains allegations about the role played by Xerox shareholders Mr. Deason and Carl Icahn.  (*See id.* ¶¶ 77-101.)  Those issues are already being litigated in the State Court Actions because the same settlements, and, in particular, allegations about the role played by Messrs. Icahn and Deason, are the subject of shareholder derivative claims (including against Fuji) asserted by plaintiff Ribbe.[6]  Indeed, ***Fuji*** itself has already served discovery requests on Mr. Deason and has subpoenaed Mr. Icahn ***in the State Court Actions***, and also served discovery requests on Xerox and the Xerox directors, seeking discovery of those same issues.  (*See* Exs. L-P.)

Given the substantial commonality of issues, it is no surprise that the premature discovery requests served by Fuji in this action overlap with the discovery it has sought in the state court proceedings.  For example, Fuji seeks in both this action and the state court proceedings all documents and communications from January 1, 2017 through January 31, 2018 concerning valuations of Xerox and evidencing Xerox's financial performance.  (Ex. Q at Req. Nos. 12, 14; (Ex. O at Req. Nos. 7, 8.)  Likewise, Fuji's requests in both fora seek documents concerning any alternative transaction considered by Xerox through the present date (Ex. Q at Req. No. 2(a); Ex. O at Req. No. 5) and, without regard to any specific time period, all cooperation agreements, settlement agreements and/or releases between Xerox and any person related to this action or the

---

[6]  (Ex. K at 78-92.)

state court actions.  (Ex. Q at Req. No. 19; Ex. O at Req. No. 25.)

ARGUMENT

## I.     THIS ACTION SHOULD BE DISMISSED BECAUSE FUJI'S DECISION TO FILE IN THIS COURT CONSTITUTES IMPROPER FORUM SHOPPING.

### A.     The Forum Selection Clause of the SSA Does Not Prohibit a Motion to Dismiss This Action on the Basis of Fuji's Improper Forum Shopping.

The SSA includes a forum selection clause pursuant to which the parties submitted to the "exclusive jurisdiction of the courts of the State of New York and the courts of the United States located in the Borough of Manhattan, New York, New York . . . for the adjudication of any Action or legal proceeding relating to or arising out of" the SSA or the Fuji Transaction.  (SSA § 8.07.)  The forum selection clause further provides that each party "waives any objection which it may now or hereafter have to the laying of venue in such courts and agrees not to plead or claim in any such court that any such action or legal proceeding brought in any such court has been brought in an inconvenient forum."  (*Id.*)

In its pre-motion correspondence, Fuji has suggested that this clause prohibits Xerox from challenging this forum.  (*See* August 21, 2018 Fuji Letter [Dkt. No. 20].)  This argument fails, both in its mischaracterization of the forum selection clause and its failure to appreciate this Court's inherent power to control its own docket and dismiss cases in the interest of justice.  To begin, the SSA's forum selection clause expressly designates ***both*** the New York Supreme Court and this Court as having "exclusive jurisdiction" over claims arising from the Fuji Transaction.  Thus, on its face, the purpose of the clause is to prohibit attempts to litigate in a forum ***other than*** New York.  It is inapposite where, as here, Xerox asserts that the proper forum is one of the contractually designated courts.

In any event, regardless of the forum selection clause, this Court always retains the inherent jurisdiction to dismiss a case if it determines that an alternative forum is more appropriate.

12

In *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, this Court granted a defendant's motion to transfer an action to the Northern District of Illinois, on the basis of a related bankruptcy proceeding. No. 15-cv-3474, 2015 WL 5257003, at *13 (S.D.N.Y. Sept. 9, 2015). In doing so, the Court rejected an argument that the movant had waived its right to object to the forum based on a contract provision providing, like § 8.07 of the SSA, that "[t]he parties hereto waive any objection to any action instituted hereunder in any such court based on *forum non conveniens*, and any objection to the venue of any action instituted hereunder in any such court." *Id.* at *4. The Court explained that such clauses are normally given controlling weight to "promote the interest[s] of justice," but that enforcement of the clause in that case, where the parallel proceedings were "closely intertwined," "would not serve the interests of justice." *Id.* at *10-11 (quotations omitted). Notably, the court found that the plaintiff's choice of forum, which came shortly after an unfavorable decision in the related proceeding, was "transparent forum shopping." *Id.* at 10.

Fuji chose to sue in this Court in the hope of avoiding another adverse decision from Justice Ostrager. The forum selection clause cannot be interpreted as condoning such blatant forum shopping.

### B.    This Action Should be Dismissed on Grounds of *Forum Non Conveniens*.

The doctrine of *forum non conveniens* permits a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim[s]." *LaSala v. UBS, AG*, 510 F.Supp.2d 213, 221 (S.D.N.Y. 2007) (citations omitted). Pursuant to the doctrine, courts are given "broad discretion" in deciding "where trial will be most convenient and will serve the ends of justice." *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991). While the doctrine of *forum non conveniens* is commonly used where a movant seeks to have the action litigated in another state or country, there is no *per se* bar to its application in favor of a state court in the same jurisdiction. Indeed, such "a per se rule would conflict with the hallmarks of the *forum*

*non conveniens* doctrine – namely, its flexibility and the wide discretion it invests in the trial judge." *Fustok v. Banque Populaire Suisse*, 546 F.Supp. 506, 514 (S.D.N.Y. 1982). Thus, federal courts appropriately exercise that broad discretion to dismiss under the doctrine where the relevant factors "strongly suggest that litigation should proceed elsewhere." *Alfadda v. Fenn*, 966 F.Supp. 1317, 1332 (S.D.N.Y. 1997).

A district court should dismiss an action where, on balance, resolution of the matter in an alternative forum would be more convenient and more just. *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir. 1991). In making this assessment, courts consider (1) the level of deference to be given to plaintiff's choice of forum, (2) whether an adequate alternative forum exists, and (3) whether the balance of private and public interest factors weighs in favor of dismissal. *See, e.g., Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001). "[T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing *forum non conveniens* dismissal. At the same time, a lesser degree of deference to the plaintiff's choice bolsters the defendant's case . . ." *Pollux Holding*, 329 F.3d at 74.

Each of the relevant factors weighs in favor of the Court exercising its discretion and dismissing this action in favor of the New York Supreme Court.

### 1. *Fuji's Choice of Forum is Clear Forum Shopping and, Therefore, Entitled to no Deference.*

The degree of deference accorded to a plaintiff's choice of forum "moves on a sliding scale depending on several relevant considerations." *Iragorri.*, 274 F.3d at 71. In particular, where a plaintiff's choice is "motivated by forum-shopping reasons," the "less deference the plaintiff's choice commands." *Id.* at 72.

Fuji's choice of forum is entitled to no deference, as the decision to commence an action in this Court is transparent forum shopping.  Indeed, if Fuji's decision was motivated in any way by convenience, Fuji would have filed these claims in the New York forum already intimately familiar with the facts, including the Fuji Transaction.  Instead, however, Fuji chose deliberately to *avoid* that court, despite pursing cross-claims and third-party claims, as well as discovery, in that court.  Fuji's motivation for doing so could not be more obvious.  As noted above, Justice Ostrager has already concluded that there is a likelihood of success on the plaintiffs' claims against Fuji in connection with the Fuji Transaction, which the court described as a "one-sided deal" that "disproportionately favored Fuji at the expense of Xerox shareholders."  *In re Xerox Corp.*, 76 N.Y.S.3d at 771, 773.  Fuji's decision to file new claims relating to the Fuji Transaction in this Court can only be viewed as an attempt to avoid Justice Ostrager and obtain a more favorable result with a different judge.

> ### 2.   *New York State Supreme Court is an Adequate Alternative Forum.*

The availability of an adequate alternative forum to hear the dispute also favors dismissal on the grounds of *forum non conveniens*.  An alternative forum is adequate if "the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75.  To support dismissal, the alternative forum need not be the best possible court but simply capable of litigating the dispute.  *Saud v. PIA Invs. Ltd.*, No. 07-cv-5603(NRB), 2007 WL 4457441, at *3 (S.D.N.Y. Dec. 14, 2007).

By filing its cross-claims and third-party claims in *Deason I* and the Class Action, Fuji has already conceded that the New York Supreme Court is an adequate alternative forum to hear disputes arising from the Fuji Transaction between Xerox and Fuji.  *See Saud*, 2007 WL 4457441, at *3.  The claims being litigated in the State Court Actions, including those brought by Fuji, involve many of the same underlying facts as Fuji's claims in this Court.  (*See supra*, pp. 11-

15

13.)  In short, there is nothing stopping Fuji from bringing these claims against Xerox in the New York Supreme Court, just as it has done with its cross-claims and third-party claims.

### 3. *The Balance of Public and Private Interest Factors Strongly Favors Adjudication in New York State Supreme Court.*

Finally, the public and private interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), weigh strongly in favor of litigating this dispute in the New York Supreme Court.  As this Court has recognized, when faced with a motion to dismiss in favor of a state court, "where the balance of convenience dictates that the state court should handle the matter, the federal court has the power to dismiss the case." *Simon v. Silfen*, 247 F. Supp. 762, 763 (S.D.N.Y. 1965).

The public interest factors to be considered include the "[a]dministrative difficulties [that] follow for courts when litigation is piled up in congested centers instead of being handled at its origin"; the burden of jury duty, which "ought not to be imposed upon the people of a community which has no relation to the litigation"; the "local interest in having localized controversies decided at home'; and the "appropriateness" of having the legal issues decided by "a forum that is at home with the . . . law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gilbert*, 330 U.S. at 508-09.  The private interest factors relate to the convenience of the litigants, and include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling [witnesses], and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508.

As discussed above, these new claims by Fuji arise out of the same facts as the claims being litigated in the State Court Actions before Justice Ostrager.  It is more efficient for the court system – including this Court's busy docket – and also for the parties, if Fuji's new claims

are heard by the same judge who, for months, has presided over the three other actions relating to

the Fuji Transaction.  Additionally, discovery is already underway in the State Court Actions and

the discovery requests served by Fuji in ***this action*** overlap with those served by Fuji in the State

Court Actions.  Thus, having all of the claims relating to the Fuji Transaction heard in one court

would allow for more efficient coordination of discovery and avoid duplicative efforts and costs.

This is especially important in this instance, where many of the witnesses are located overseas in

Japan

Because the public and private factors weigh strongly in favor of litigating these

claims in New York Supreme Court, this Court should exercise its discretion to dismiss this action.

*See e.g.*, *Simon*, 247 F. Supp. at 763 (dismissing federal action based on suits pending in New York

Supreme Court involving same parties and related claims); *Brice v. C.R. England, Inc.*, 278 F.

Supp. 2d 487 (E.D. Pa. 2003) (dismissing claim in favor of Ohio state court, where related action

was already pending); *Ott v. Kaiser-Georgetown Cmty. Health Plan, Inc.*, 689 F. Supp. 9 (D.D.C.

1988) (dismissing federal action in favor of pending related action in Maryland state court).

## II.    FUJI'S CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Independently, the claims brought by Fuji should each be dismissed for failure to

state a claim under Rule 12(b)(6).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The complaint's allegations

"must be enough to raise a right to relief above the speculative level." *Chamberlain v. Am. Honda*

*Fin. Corp.*, 931 A.2d 1018, 1023 (D.C. Cir. 2007) (quotations omitted).

As to contract claims, this Court has acknowledged that, "[b]ecause the

interpretation of contracts generally is a question of law to be determined by the Court, it may

17

dismiss the complaint where contracts are unambiguous and do not support the plaintiff's claim." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 509-10 (S.D.N.Y. 2012) (citations omitted).  In determining the meaning of a contract, "a court is not obliged to accept the allegations of the complaint as to how to construe a contract," and "[c]lear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." *Maniolos v. United States*, 741 F. Supp. 2d 555, 567, 569 (S.D.N.Y. 2010). Where the clear words of a contract are contrary to a plaintiff's allegations, the claim must be dismissed.  *Merit Grp., LLC v. Sint Maarten Int'l Telecom. Servs., NV*, No. 08-cv-3496(GBD), 2009 WL 3053739 (S.D.N.Y. Sept. 24, 2009).

**A.**     **Fuji Has Failed to State a Claim Against Xerox Based on Xerox's Proper Exercise of its Termination Rights.**

Fuji's claims premised on Xerox's termination of the SSA should be dismissed because they are contrary to the clear language of the SSA.  *See e.g.*, *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257 (E.D.N.Y. 2016).  Xerox negotiated for and secured the unilateral right to terminate the agreement if key financial performance results reflected in the audited financial statements of Fuji Xerox delivered by Fuji "deviate, in any material respect" from the unaudited results previously provided to Xerox in diligence.  (SSA § 7.01(d); Compl. ¶ 59.) Indeed, when Xerox finally received the audited financial statements on April 24, 2018, they contained material deviations from earlier figures, including that Fuji Xerox's net income for the fiscal year ending March 31, 2017 was *14.7%* lower than the net income reported in Fuji Xerox's unaudited financial statements for the same period and EBITDA for that same period was *6.7% lower*. (Ex. D.)  Those figures are not disputed by Fuji.  The issue of materiality can be decided as a matter of law on a motion to dismiss where, given the magnitude of these deviations, "reasonable minds could not differ on the question of [their] importance."  *See, e.g, Geiger v.*

*Solomon-Page Grp., Ltd.*, 33 F. Supp. 1180, 1184 (S.D.N.Y. 1996) (determining materiality of omission on motion to dismiss).

Xerox also notified Fuji in the May 13 letter that it was exercising its right to terminate pursuant to Section 5.05(a) of the SSA, because the audited financial statements were delivered to Xerox after April 15.  The SSA provided that Fuji would deliver the audited financial statements to Xerox as soon as possible following execution of the agreement and "in any event no later than April 15, 2018."  (SSA § 5.05(a).)  The agreement between the parties could not be any more clear.  The complaint does not dispute that Fuji failed to meet its obligation to deliver Fuji Xerox's final audited financial statements by April 15, 2018.  (Compl. ¶ 73; *id.* ¶ 76 ("Xerox publicly filed copies of the audited financial reports that ***Fujifilm provided on April 24, 2018***.") (emphasis added).)

Fuji's breach of contract claim, therefore, fails as a matter of law because it is contrary to the clear language of the SSA, which allowed Xerox to terminate based on either of the two provisions identified in its May 13 letter.  Fuji's allegation that Xerox's stated reasons for termination are pretextual, even if assumed to be true, is irrelevant.  *See e.g., Nationwide CATV Auditing Servs., Inc. v. Cablevision Sys. Corp.*, No. 12-cv-3648, 2013 WL 1911434, at *6 (E.D.N.Y. May 7, 2013) ("[defendant's] stated reason for terminating the Agreement and whether that reason was pretextual is irrelevant and cannot support a breach of contract claim" in the face of clear right of termination in the relevant agreement); *Symquest Grp.,* 186 F. Supp. 3d at 263 (dismissing breach of contract claim where plaintiff's termination of agreement and refusal to continue providing services "was merely exercising its legitimate contractual rights").

The claim that Xerox breached the implied covenant of good faith and fair dealing should be dismissed as duplicative of the breach of contract claim because it is based on the same

facts. *See 3839 Holdings LLC v. Farnsworth,*, Index No. 654463/2016, 2017 WL 5649812, at *__ (Sup. Ct. N.Y. Cty. Nov. 24, 2017). Further, a party's "exercise of its legitimate contractual rights cannot have breached any implied duty." *Symquest Grp., Inc.*, 186 F. Supp. 3d at 266 (dismissing claim for breach of the implied covenant of good faith and fair dealing).

### B.   Fuji Has Failed to State a Breach of Contract Claim Against Xerox Arising From its Settlement of the *Deason I* Litigation.

The claim against Xerox for an alleged failure to notify or obtain the consent of Fuji in connection with its settlement of the *Deason I* litigation also fails as a matter of law. Under New York law, a breach of contract claim must allege "damages suffered by the plaintiff." *Am. Nat'l Theatre*, 2006 WL 4882916, at *3. Even assuming for purposes of this motion that Xerox did fail to provide notice to, or obtain the consent of Fuji, the complaint's failure to allege any actual non-speculative damages suffered by Fuji as a result of that purported breach is fatal. *See Andrews v. Sotheby Int'l Realty, Inc.*, No. 12-cv-8824 (RA), 2014 WL 626968, at *5 (S.D.N.Y. Feb. 18, 2015) ("In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint."); *Saxon Tech., LLC v. Wesley Clover Solutions-N. Am.*, Inc., Index No. 652169/2013, 2014 WL 36104, at *3 (Sup. Ct. N.Y. Cty. Jan. 2, 2014) ("[A] breach alone does not entitle a plaintiff to recover; there must be non-speculative damages resulting from such breach.")

### C.   Fuji Has Failed to State A Claim for Declaratory Relief Resulting from Xerox's Purported "Change of Recommendation"

Finally, Fuji seeks in Count IV a declaratory judgment that it is entitled under the SSA to the option of terminating the agreement and obtaining a termination fee of $183 million from Xerox. Fuji bases this claim on Section 7.01(c)(i) of the SSA, which entitles Fuji to terminate the agreement in the event Xerox "effects a Change in XC Recommendation . . . ." Specifically, Fuji alleges that the SSA prohibited Xerox from either "fail[ing] to include in the Proxy Statement,

20

or withdraw[ing] or modify[ing], in any manner adverse to [Fuji]," its prior recommendation that Xerox shareholders vote in favor of the Fuji Transaction. (Compl. ¶ 134.) Fuji alleges that Xerox has breached this provision of the SSA by "failing to file the Special Meeting Proxy" as required under section 5.04(a) of the SSA. (Compl. ¶ 134.)

This claim fails as a matter of law because it ignores that Xerox was legally constrained from taking *any* action in furtherance of the Fuji Transaction, following the Injunction. (Compl. ¶ 75.) Fuji cannot seek relief for Xerox's failure to take action explicitly prohibited by court order. *In re Martin Paint Stores*, 199 B.R. 258, 266 (Bankr. S.D.N.Y. 1996), *aff'd*, 207 B.R. 57 (S.D.N.Y. 1997) ("entry of a judicial order that renders performance legally impossible excuses the Party who must perform…"); *see also* Restatement (Second) of Contracts § 264 (a party may be excused from nonperformance of contractual obligations "[i]f the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order").

This claim also fails for the independent reason that, if the Court concludes that Xerox property terminated the Transaction Agreements, Fuji is not entitled to a declaration that it has "the option of terminating the SSA." (Compl. ¶ 149.) "Under New York law, where the parties to a contract have agreed to a written termination clause, it must be enforced as written." *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996). Section 7.02(a) of the SSA provides that the agreement will "become void and of no effect, and there shall be no liability under this Agreement on the part of any party hereto or their respective Affiliates" once a party exercises its right to terminate the SSA. (SSA § 7.02(a).) Consequently, Fuji cannot seek any relief – including a declaration that it is entitled to the option of termination – under an agreement that is already "void and of no effect" as a result of Xerox's termination. *See* SSA § 7.02(a); *see also TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15-cv-3371 (SAS), 2015

21

WL 4461769, at *8 (S.D.N.Y. July 21, 2015) (dismissing claim for consequential damages because the defendant's "notice of termination effectively ended the contract immediately").

## CONCLUSION

For the foregoing reasons, Xerox respectfully requests that the Court dismiss Fuji's complaint in its entirety.

Dated: New York, New York
      October 1, 2018

**WILLKIE FARR & GALLAGHER LLP**

Tariq Mundiya
Sameer Advani
Shaimaa Hussein
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
tmundiya@willkie.com
sadvani@willkie.com
shussein@willkie.com

*Attorneys for Defendant Xerox Corporation*

22

## Certification

I, Shaimaa Hussein, attorney for Defendant Xerox Corporation, hereby certify that this brief is in compliance with Your Honor's Individual Rules of Practice. The typeface is Times New Roman and the font of the main body of the brief is in 12 point. The brief contains 6,948 words counted by the word-processing program.

Dated:  October 1, 2018