

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1 212 839 5839
AJKAPLAN@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE

July 19, 2019

**BY ECF AND HAND DELIVERY**

The Honorable Barbara Moses
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Fujifilm Holdings Corp. v. Xerox Corp.*, No. 18-cv-5458 (JGK) (BCM)

Dear Judge Moses:

I write on behalf of Fujifilm Holdings Corp. in response to the July 16, 2019 letter submitted by the Withholding Parties (Dkt. 79, the "Opposition" or "Opp.").

Fujifilm's Complaint states detailed claims for breaches of the parties' Transaction Agreements governing their $6.1 billion Transaction. Despite those agreements prohibiting Xerox from entering settlement agreements without notice to Fujifilm and its consent to the same, Xerox entered *four* settlement agreements through which it ultimately (i) gave control of its board of directors to Carl Icahn and Darwin Deason and (ii) purported to terminate the parties' Transaction. The Withholding Parties contend that their selective production of documents *before* "signature pages were released" for each settlement is proper, as is their withholding of communications *thereafter* because "the settling parties were not 'adverse' after they agreed to resolve their claims and courts around the country routinely hold that some adversity between parties does not preclude a common interest." Opp at 2. The Withholding Parties further suggest that these withheld documents are "irrelevant" because they date after the agreements were entered (Opp. at 3), even though they were identified on privilege logs as communications about and reflecting Xerox's contractual breaches (and thus, are unquestionably relevant). The weight of the law, however, makes clear that provision of privileged material to one's adversary generally waives privilege and exceptions to this waiver are narrowly construed.

In their Opposition, the Withholding Parties do not approach the "heavy" burden they bear on this motion, and instead present arguments reflecting a myopic take on the facts and the law. The subject documents should be produced.

***The Subject Documents Are Communications Between Adverse Parties***

The Withholding Parties contend that Fujifilm's objections to their settlements are the basis of their supposed common interest from May 1-3, and then from May 13 forward. They also contend that: (i) "the settling parties were not adverse after they agreed to resolve their claims" on May 1 and May 13 and (ii) they already produced documents "reflecting negotiations." Opp. at 2-3. This factual recitation is oversimplified and misleading.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

**SIDLEY**

Page 2

     Class Plaintiffs and Xerox remain adverse to this day. Deason and Xerox remained adverse until their non-contingent settlement on May 13 at 5:30 p.m. (at which time even their proffered settlement-related common interest evaporated). *See also Chrysler Motors Corp. Overnight Eval. Prog. Litig.*, 860 F.2d 844, 846-47 (8th Cir. 1988) (that parties "shar[e] a common interest in settling claims … does not neutralize the act of disclosure because that common interest always exists between opposing parties in any attempt at settlement"). Further, Fujifilm's May 2 correspondence regarding the May 1 settlements targeted the procedure though which the Withholding Parties asked the state court to approve their settlements, which would effectuate a change of control of Xerox's board, outside the public view, on a 48-hour track.[1] These objections also bear no relation to what matters on this motion: the Withholding Parties' status as adverse parties in pending litigation.

     The Withholding Parties' position otherwise mischaracterizes the first two weeks of May 2018 and their productions. The events of May 3 illustrate the point. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] It appears ▮▮▮▮ (and communications relating to it) have been withheld as privileged.

     The risk that Xerox's May 1 settlement with Deason and Icahn would expire soon increased exponentially. In an 8:56 a.m. notice, the state court declared that "there is no exigent circumstance that requires the Court to act in the middle of the night…." At a 3:00 p.m. conference, the court made clear it would not execute the requisite stipulations.[3] In the midst of these events, the Withholding Parties behaved as adverse, negotiating parties. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[4]

This documentary evidence strongly supports Fujifilm's pretextual breach claim. It appears, however, that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have been withheld as "privileged." *But see* Opp. at 3 (purportedly produced "evidence relevant to Fujifilm's claim" includes "the parties' negotiations").

     At 8:00 p.m. on May 3, the May 1 settlement expired. ▮▮▮▮▮▮▮▮▮

---

[1] *See* Ex. 14. Additionally, the Withholding Parties' contention regarding settlement objections in no way supports the withholding of documents following Xerox and Deason's non-contingent May 13 settlement.
[2] Ex. 15.
[3] Exs. 16-17.
[4] *See* Ex. 18; *see also* Ex. 19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**SIDLEY**

Page 3

███████████████████████████████████████████████.⁵ On May 4, at 9:09 and 9:22 a.m., Paul, Weiss noticed those appeals (events not found in the Opposition).⁶ Those filings, plainly drafted *before* ██████████████████████████, undermine the Withholding Parties' assertion that from May 1-3 they were "not 'adverse.'" Opp. at 3. The inescapable reality is that from May 1-3, Deason (represented by King & Spalding) and Class Plaintiffs were litigating *against* Xerox (represented by Paul, Weiss).

***Pertinent Case Law Strongly Endorses Production of the Subject Documents***

The privileges the Withholding Parties invoke are inconsistent with the disclosure of privileged material to an adversary. Mot. at 3-4. Consequently, communications regarding a settlement agreement pending court approval are not privileged. The most germane case cited by the parties on this score, *Chrysler Motors*, mandates production. The Withholding Parties' efforts to distinguish this decision as relating to "negotiations" and therefore meaningfully different from their "pre-" versus "post-" settlement line drawing is unavailing. In fact, in its brief to the Eighth Circuit, Chrysler advanced almost *exactly* the same faulty argument the Withholding Parties do here. Chrysler argued:

> [T]he Government claims that because class plaintiffs were 'adversaries,' Chrysler waived the privilege for all purposes when it allowed liaison [class] counsel to inspect the tape. This position is unsupported.… As a factual matter, the class had been conditionally certified for settlement purposes and the Master Settlement Agreement had been signed for over four months before the [privileged material] was provided to class counsel. Thus, Chrysler and class counsel were from this time forward no longer adversaries.…

*See* Reply Br., 1988 WL 1045129, at *7 (8th Cir. Oct. 12, 1988). This position was rejected by the Circuit Court. Opp. at 4. The Eighth Circuit's adherence to the waiver principle should likewise govern here: the fact that parties "may have a common interest in settling claims does not neutralize the act of disclosure because that common interest always exists in any attempt at settlement." *Chrysler Motors*, 860 F.2d at 846-47.⁷

Further, the underlying relationship among the pertinent parties should govern the "adversity" analysis, not their *post hoc* characterizations of the same. In *Steinhardt Partners*, for example, the Second Circuit evaluated whether voluntary provision of privileged material to the SEC waived privilege. 9 F.3d 230, 234-35 (2d Cir. 1993). Steinhardt argued that because it had acted voluntarily, it was not adverse to the SEC and there was no waiver. The Court affirmed that even though there were never "any formal enforcement proceedings," "[t]he determinative

---

⁵ Ex. 19.
⁶ Exs. 20-21.
⁷ *See also In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979) (reversing approval of class settlement; "conduct of the negotiations was relevant to the fairness of the settlement" and "trial court's refusal to permit discovery or examination of the negotiations constituted an abuse of discretion").

# SIDLEY

Page 4

fact in analyzing the adversarial nature of the relationship is that Steinhardt knew that it was the subject of an SEC investigation." *Id.* at 234. The Second Circuit concluded that "the fact that Steinhardt cooperated voluntarily does not transform the relationship from adversarial to friendly." *Id.* The same rationale applies here with even greater force: the Withholding Parties were (or remain) opposing parties in pending litigation, and during the May 1-3 window in particular, had no assurance as to if or when their litigation would come to a close. *See id.* at 235 ("voluntary disclosure of work product to an adversary waives the privilege").

Despite staking out a broadly applicable position and asserting that courts "routinely" hold as much, the Withholding Parties cite *one* case suggesting a common interest could attach to litigating adversaries: *In re Tribune Co.*, from the United States Bankruptcy Court for the District of Delaware. 2011 WL 386827 (Bankr. D. Del. Feb. 3, 2011). That decision is inapposite for numerous reasons, and in many ways supports Fujifilm. *Tribune* did not prohibit production of all settlement-related communications *or* draw the "pre-" and "post-" agreement line the Withholding Parties advocate. Rather, the settling parties were ordered to produce certain "discovery regarding LBO settlements," which apparently included "communications relating to negotiation *and abandonment of* the April Plan," a privately negotiated document filed in April 2010 "that sought to implement the terms of a settlement agreement" but months later, like the May 1 settlements, "was abandoned." *Id.* at *1-2, 7, 9. The Court excluded from production on a common interest basis certain (but not all) communications pertaining to a subsequent settlement reached in a mediation overseen by another member of the Bankruptcy Court. *See id.* at *7-9. In so holding, the Bankruptcy Court analogized to Third Circuit case law applying the common interest doctrine to "purely transactional contexts" – an application that is notably directly contrary to *New York*'s common interest doctrine.[8] *Id.* at *5. This one decision does not approach the burden the Withholding Parties bear on this motion.[9]

The Withholding Parties seek to shield from discovery critical communications striking at the heart of Fujifilm's claims. Fujifilm respectfully requests the Court order the production of these relevant documents.

---

[8] *Compare* 2011 WL 386827, at *5 (citing *Teleglobe,* 493 F.3d 345, 364 (3d Cir. 2007) for proposition that "parties engaged in a merger negotiation may share a common interest"; discussing application "in purely transactional contexts") *with Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 620 (2016) (rejecting doctrine as to communications "shared when the two entities were in the process of merging").

[9] *But see Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 169 (S.D.N.Y. 2008) (A withholding party's showing "must be based on competent evidence[.] The burden cannot be met by mere conclusory or ipse dixit assertions in unsworn papers authored by attorneys") (citations omitted). The remaining cases cited do not address directly adverse parties. *See ACE Sec. Corp. v. DB Structured Prod., Inc.*, 55 Misc. 3d 544, 561-63, 40 N.Y.S.3d 723 (N.Y. Sup. 2016) (finding that plaintiff trustee's communications with certificate holders were protected by a common interest because they were coordinating their litigation position against the defendant); *In re Rivastigmine Patent Litig.*, 2005 WL 2319005, at *3-5 (S.D.N.Y. Sept. 22, 2005) (finding "potential" common interest in the patent context, between inventor and assignee, but granting defendants' motion to compel because assignee-plaintiff failed to provide sufficient evidence of the same).

**SIDLEY**

Page 5

                                              Respectfully submitted,

                                              /s/ *Alex J. Kaplan*

cc:    Tariq Mundiya, Esq. (via ECF and email)
         Jay Cohen, Esq. (via email and Hand Delivery)
         Richard Marooney, Esq. (redacted versions via email and Hand Delivery; unredacted versions will be provided upon Xerox or the Court's approval of the same)

Encls.