

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1 212 839 5397
ASTERN@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE

August 5, 2019

**BY ECF AND HAND DELIVERY**

The Honorable Judge Barbara Moses
Daniel Patrick Moynihan United States Courthouse
Room 20A
500 Pearl Street
New York, New York 10007-1312

      Re:    <u>Fujifilm Holdings Corp. v. Xerox Corp.</u>, No. 18-cv-5458 (JGK) (BCM)

Dear Judge Moses:

      On behalf of Fujifilm Holdings Corp. ("Fujifilm"), we write pursuant to Local Civil Rule 37.2 to request a pre-motion conference to request an order compelling the deposition of Giovanni ("John") Visentin, Xerox Corp.'s ("Xerox") current Chief Executive Officer. Mr. Visentin has held that position since May 13, 2018—a crucial date in this litigation—and previously served as a consultant to Carl Icahn in connection with his proxy contest against Xerox. Mr. Visentin has personal or unique knowledge pertinent to this case. Xerox confirmed as much by listing him in its initial disclosures and interrogatory responses as an individual with such knowledge.

      Nonetheless, Xerox objects to Mr. Visentin's deposition on the grounds that his testimony is "neither necessary nor proportional" to this case.[1] But as Xerox argued recently in seeking the deposition of Fujifilm's CEO, "to 'obtain an order vacating the deposition notice' of a senior executive, the party seeking the protective order must 'demonstrate that the proposed deponent has no personal knowledge of the relevant facts and no unique knowledge of those facts.'" (See Dkt. 80 at 8, quoting *Fermin v. Rite Aid of New York*, 2012 WL 364035, at 2 n.1 (S.D.N.Y. Feb. 3, 2012)). Moreover, Fujifilm has offered to minimize any burden for Xerox by examining Mr. Visentin near his office in Norwalk, Connecticut. Xerox's objection is thus belied by its own arguments of just three weeks ago, its own initial disclosures and interrogatory responses, and the nature of the issues at stake for both sides. Mr. Visentin should be compelled to provide deposition testimony in this matter.

---

[1] Xerox stated its objection to Mr. Visentin's deposition in two telephonic calls among counsel (held Sunday, July 28 between Fujifilm counsel Andrew W. Stern and Xerox counsel Tariq Mundiya and Sameer Advani, and Thursday, August 1 among Xerox Counsel Sameer Advani and Shaimaa Hussain and Fujifilm counsel Alex J. Kaplan, Elizabeth Y. Austin, and Charlotte K. Newell) and in emails exchanged between the parties. *See* Ex. B.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

**SIDLEY**

Page 2

\*   \*   \*

Mr. Visentin's involvement in the facts pertinent here began in March 2018, when Mr. Icahn retained Mr. Visentin to "help prepare for a proxy fight with Xerox Corp. and to explore strategic alternatives for the printer and copier maker." *See* Ex. A (WALL STREET JOURNAL, *Icahn Taps Tech Executive to Prepare for Proxy Fight With Xerox*, March 14, 2018). In that capacity, Mr. Visentin assisted Mr. Icahn and Mr. Deason in their efforts to thwart the transaction between Fujifilm and Xerox that had been announced on January 31, 2018, the purported termination of which is at the heart of this litigation.

Mr. Visentin appears on numerous privilege logs in this case. For example, Mr. Deason's and King & Spalding's privilege logs, discussed with the Court on July 22, 2018, contain numerous entries including Mr. Visentin, evidencing his involvement in communications among the Deason and Icahn group about matters relevant to this litigation. *See, e.g.*, Ex. C (King & Spalding Log, entry 1, reflecting 295 withheld documents including Mr. Visentin among communicators); Ex. D (Deason's privilege log, entry 1, reflecting 149 withheld documents including Mr. Visentin among communicators). In defending their inclusion of Mr. Visentin among their "common interest" group, counsel at King & Spalding explained that Mr. Visentin "was necessary to enable attorney-client communication in connection with counsel's role in crafting legal strategy for the proxy contest and related litigations, drafting proxy materials, communications with shareholders, and SEC filings." *See* Ex. E. The fact that Mr. Visentin apparently played such a critical role in developing Messrs. Icahn's and Deason's strategy to scuttle the Transaction underscores the wealth of personal knowledge he has about matters related to this litigation.

Mr. Visentin's job title changed on May 13, 2018. That day, by virtue of the New York state court settlements at issue in this litigation – and in conjunction with Xerox's termination of the Transaction – Mr. Visentin was appointed to the Xerox Board of Directors. The following day, May 14, he was formally appointed as Xerox's CEO. This was, apparently, something Mr. Visentin had been anticipating for weeks. As Mr. Deason explained on May 13, in the wake of Xerox's purported termination, "Xerox is now positioned to conduct a true, robust strategic alternatives process. John Visentin has spent weeks preparing himself to run the company and speaking to numerous market participants regarding strategic alternatives…." Ex. F. Mr. Visentin plainly engaged in a search for "strategic alternatives" in the weeks leading up to Xerox's May 13 purported termination because he was aware of Icahn and Deason's plans for the same. Not surprisingly, Xerox itself has admitted that Mr. Visentin has knowledge regarding its putative termination: it listed Mr. Visentin on its initial disclosures as a witness on that issue. *See* Ex. G at p. 3. Xerox also has admitted that Mr. Visentin has knowledge regarding a related

# SIDLEY

Page 3

market canvass regarding strategic alternatives: it identified him in interrogatory responses as just one of two people with such knowledge. *See* Ex. H at 12.

* * *

The foregoing illustrates that Mr. Visentin has a wealth of personal knowledge regarding the circumstances at issue in this litigation, consistent with his inclusion on Xerox's initial disclosures. The "apex deposition doctrine" is thus unavailing, for the reasons Xerox itself explained three weeks ago: Mr. Visentin has "personal or unique" knowledge and his deposition is therefore appropriate. *See, e.g., Fermin,* 2012 WL 364035, at 2 n.1. Xerox's related proportionality argument is likewise belied by its arguments of a few weeks ago: as Xerox noted, this case presents a billion dollar claim, an amount underscoring its relative importance to the parties, including Xerox, a company with a current market cap of roughly $6.75 billion. There is nothing disproportionate about asking Mr. Visentin to attend a one-day deposition in a case that is focused on Xerox's conduct.

Fujifilm respectfully requests that the Court compel the deposition of Mr. Visentin.

Respectfully submitted,

Andrew W. Stern

cc: Counsel of Record (via ECF)